**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| TYJUAN ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 15 C 50065 |
| | ) | |
| CITY OF ROCKFORD, DOMINIC IASPARRO, | | |
| JOSEPH STEVENS, JAMES RANDALL, | ) | Judge Frederick J. Kapala |
| DOUG PALMER, SCOTT MASTROIANNI, | ) | |
| THEO GLOVER, KURT WHISENHAND, | ) | |
| TORRY REGEZ, SHERYL LINDMARK AS | ) | Magistrate Judge Iain D. Johnston |
| THE PERSONAL REPRESENTATIVE OF | ) | |
| THE ESTATE OF GREGORY LINDMARK, | ) | |
| AND UNKNOWN EMPLOYEES OF THE | ) | |
| CITY OF ROCKFORD, JOHN DOES ONE | ) | |
| THROUGH NINE, | ) | |
| | ) | |
| Defendants. | ) | |

**ANSWER TO COMPLAINT**

Defendant, Doug Palmer ("Palmer"), through his attorneys, WilliamsMcCarthy LLP, for his

answer to the complaint of plaintiff, states as follows:

**INTRODUCTORY AND JURISDICTIONAL STATEMENT**

1.  This is a civil action seeking money damages on behalf of Plaintiff Tyjuan Anderson (herein

    "ANDERSON").  Counts I through IV assert 42 U.S.C. § 1983 claims against all Defendants

    for violations of ANDERSON'S constitutional rights under the First, Fourth, Fifth, Sixth, and

    Fourteenth Amendments to the United States Constitution.

    **ANSWER:**  Palmer admits that plaintiff has alleged a cause of action pursuant to 42
    U.S.C. § 1983, but specifically answers those allegations as more fully set
    forth below.

2.  This Court has original jurisdiction of ANDERSON'S causes of action under 28 U.S.C. §§

    1331, 1343, and 42 U.S.C. §§ 1983.

**ANSWER:**    Palmer admits that the allegations of plaintiff's complaint give rise to "federal question" jurisdiction, but specifically answers those allegations as more fully set forth below.

3.    Venue is proper with this Court under 28 U.S.C. 1391(b) as a substantial part of the events and omissions giving rise to the claims asserted herein occurred in the Northern District of Illinois.

**ANSWER:**    Palmer admits the allegations of paragraph 3 of plaintiff's complaint.

4.    On March 19, 2013, an Order granting Tyjuan Anderson Post-Conviction relief was entered, vacating his conviction. That decision was affirmed on appeal by the Appellate Court of Illinois, Second District, on November 14, 2014.

**ANSWER:**    Palmer admits the allegations of paragraph 4 of plaintiff's complaint.

### PARTIES

5.    Plaintiff Tyjuan Anderson is a resident of Rockford, Illinois. He brings this suit on his own behalf. He was wrongfully accused and convicted of murder.

**ANSWER:**    Palmer admits the allegations of paragraph 5 of plaintiff's complaint except to the extent that he is without sufficient information or knowledge to form a belief as to the truth of allegations that plaintiff was wrongfully accused and convicted of murder.

6.    At all times relevant hereto, Defendants Dominic Iasparro, Joseph Stevens, James Randall, Doug Palmer, Scott Mastroianni , Theo Glover, Gregory Lindmark, Kurt Whisenhand and Torry Regez (hereinafter "Defendant Officers") were police officers in the Rockford Police Department. All are sued in their individual and official capacities, and acted under color of state law and within the scope of their employment during this investigation and prosecution.

> **ANSWER:** Palmer admits that at the time of the criminal investigation underlying plaintiff's complaint, he was employed by the City of Rockford as a police officer and detective but otherwise invokes his Fifth Amendment privilege against self-incrimination and makes no answer to paragraph 6 of plaintiff's complaint.

7. Defendant City of Rockford is an Illinois municipal corporation duly existing under the laws of the State of Illinois. The City of Rockford is or was the employer of each of the Defendant Officers.

> **ANSWER:** Palmer admits that at the time of the criminal investigation underlying plaintiff's complaint, he was employed by the City of Rockford as a police officer and detective.

8. The true names and capacities of John Does One though Nine are presently unknown to the Plaintiff. Plaintiff is informed and believes, and based on such belief alleges, that each of said John Does is or was at times relevant responsible for damages suffered by ANDERSON. Leave of Court will be sought to amend this complaint to include the true names and capacities of John Does One through Nine as soon as such information becomes known to ANDERSON.

> **ANSWER:** Palmer is without sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 8 of plaintiff's complaint.

**FACTUAL ALLEGATIONS COMMON TO ALL COUNTS**

9. On April 14, 2002, Estella Dowthard called 911 at approximately 2:53 a.m. to report a shooting. She then found that her eight-year-old grandson, Demarcus Hanson, had been shot and killed by the shots that had gone through a window in her home and struck her grandson.

> **ANSWER:** Palmer admits the allegations of paragraph 9 of plaintiff's complaint.

10. The investigating officers assumed that the shooting was an errant bullet meant for Estella Dowthard's son, Alex Dowthard.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and makes no answer to paragraph 10 of plaintiff's complaint.

11.  Immediately after the shooting, the police wanted to speak with ANDERSON, Anthony Ross (herein "Ross"), and Lumont Johnson (herein "Johnson"). At the time, the police had neither eyewitnesses nor physical evidence linking anyone to the crime.

> **ANSWER:** Palmer admits the allegations of paragraph 11 of plaintiff's complaint.

12.  At the request of police, ANDERSON, Ross, and Johnson each voluntarily went to the police station on the date of the shooting. All denied having any knowledge whatsoever of the crime.

> **ANSWER:** Palmer admits the allegations of paragraph 12 of plaintiff's complaint.

13.  ANDERSON, Ross, and Johnson each told the police that they had been out together with Javarus Williams, on the night of the shooting. Anderson and Johnson both told the police that after spending time with Ross and Williams, they returned to Anderson's house well before 3 a.m. ANDERSON stayed at his home the remainder of the night.

> **ANSWER:** Palmer admits the allegations of paragraph 13 of plaintiff's complaint.

14.  Javarus Williams, the fourth person that ANDERSON, Ross, and Johnson were with on the night of the shooting, also voluntarily came to the police station on the day of the shooting. Williams gave a statement consistent with what ANDERSON, Ross, and Johnson had already told the police. He corroborated the fact that the four were together that night and that he then went home. According to Williams, he arrived home before 3:00 a.m.

> **ANSWER:** Palmer admits the allegations of paragraph 14 of plaintiff's complaint.

15.  Also on the day of the shooting, the Defendant Officers spoke to the suspected target of the shooting, Alex Dowthard. Mr. Dowthard, who was then on parole, told the Defendant Police

Officers that he was not present at the time of the shooting and could not identify the shooters. Mr. Dowthard, however, admitted to possessing and shooting that firearm in a separate incident, and therefore was taken into custody on a parole violation. He remained in custody until he changed his story.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and makes no answer to paragraph 15 of plaintiff's complaint.

16. Shortly before the Demarcus Hanson shooting, Alex Dowthard had tried to frame ANDERSON, Ross, and Johnson for a separate incident in which Dowthard was shot. His attempt to falsely frame ANDERSON, Ross, and Johnson for the shooting was uncovered when police investigation confirmed that Dowthard had been shot by a member of his own street gang.

**ANSWER:** Palmer is without sufficient knowledge or information to form a belief as the truth of the allegations of paragraph 16 of plaintiff's complaint.

17. On April 24, 2002, Antowan Lambert, Dowthard's gangleader at the time, went to the police station and told detectives that Ross and Johnson were responsible for the murder of Demarcus Hanson. Lambert claimed that he had gotten this information from Lataurean Brown, who he claimed was with Alex Dowthard on the night of the shooting.

**ANSWER:** Palmer admits the allegations of paragraph 17 of plaintiff's complaint.

18. After hearing from Antowan Lambert, the police called Lataurean Brown. Initially, however, Brown did not corroborate Lambert's account of the shooting. Brown told the Defendant Officers that Dowthard had shot at a blue suburban earlier that night, and that after that shooting, he and Dowthard drove to Estella Dowthard's home where Alex Dowthard hid his gun.

**ANSWER:** Palmer admits the allegations of paragraph 18 of plaintiff's complaint.

19. Brown also told the Defendant Officers that after discarding the gun, the two drove to Concord Commons where they visited with Mr. Dowthard's cousin. Brown did not initially tell Defendant Police Officers that he witnessed the shooting at Estella Dowthard's house, let alone that he saw ANDERSON, Ross or Johnson.

   **ANSWER:** Palmer admits the allegations of paragraph 19 of plaintiff's complaint.

20. From that point the investigation went cold.

   **ANSWER:** Palmer admits the allegations of paragraph 20 of plaintiff's complaint.

21. Determined to "solve" the DeMarcus Hanson shooting, the Defendant Officers engaged in a campaign of misconduct to frame ANDERSON, Ross, and Johnson, for a crime they did not commit. To do so, the Defendant Officers fabricated witness statements, coerced, physically hit and threatened witnesses, and withheld exculpatory evidence that not only would have explained why witnesses were falsely incriminating ANDERSON, but also the identity of the real shooters.

   **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 21 of plaintiff's complaint.

22. The institutional desire to close cases through unconstitutional tactics regardless of actual guilt or innocence, in order to enhance police officers' personal standing in the Department, was known to the command personnel, who themselves participated in the practice.

   **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 22 of plaintiff's complaint.

23. The misconduct of the Defendant Officers was never disclosed to the prosecutor or ANDERSON's criminal defense attorneys. The prosecutor stated that, had he known of this egregious litany of wrongdoing that occurred during this investigation, it would have unraveled the criminal investigation and the prosecution of ANDERSON.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 23 of plaintiff's complaint except to state that he is without sufficient knowledge or information to form a belief as to the truth of allegations concerning disclosure to or statements made by the prosecutor.

23.[sic]      The Defendant Officers coerced and fabricated the statements of the State's two "eye" witnesses in ANDERSON's murder trial. None of the misconduct was ever disclosed.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 23 of plaintiff's complaint.

24.      The Defendant Officers began coercing Lataurean Brown until his story changed. The Defendant Officers threatened Lataurean Brown until he changed his story about not seeing any shooting. Brown's eventual statement was manufactured by Defendant Officers before he actually met with the police.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 24 of plaintiff's complaint.

25.      According to Brown's manufactured statement, which was signed on May 9, 2002, Brown and Dowthard were present at Estella Dowthard's house when the shots went off, and Ross, Johnson and ANDERSON were responsible for DeMarcus Hanson's shooting.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 25 of plaintiff's complaint.

26.      The manufacture of Alex Dowthard's statement by the Defendant Police Officers is nearly identical to that of Lataurean Brown's statement. Mr. Dowthard repeatedly told the Defendant Officers that he did not see the shooters. Refusing to accept the truth, the Defendant Officers threatened Mr. Dowthard that if he did not change his story, they would keep him imprisoned on a parole hold and bring additional criminal charges against him. The

Defendant Officers also used physical violence against Dowthard to try to force him to implicate ANDERSON, Johnson, and Ross.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 26 of plaintiff's complaint.

27. Working through Dowthard's gang leader Antwon Lambert, (armed with promises of leniency for Dowthard provided by Defendant Police Officers) Dowthard finally gave in to the police pressure and gave a statement on May 29, 2002, implicating ANDERSON, Johnson, and Ross in the Demarcus Hanson shooting.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 27 of plaintiff's complaint.

28. To compound this unlawful conduct, the Defendant Officers concealed evidence that both impeached Mr. Brown's and Mr. Dowthard's false and fabricated statements that Plaintiffs committed the Hanson murder, and corroborated the fact that neither saw the offenders and could not identify them.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 28 of plaintiff's complaint.

29. In particular, the Defendant Officers spoke to Lataurean Brown's cousin. She told the Defendant Officers that right after the shooting, she spoke to Mr. Brown and Mr. Dowthard at Concord Commons, a neighborhood area in Rockford. Mr. Brown and Mr. Dowthard told her that they did not see who committed the crime.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 29 of plaintiff's complaint.

30. Notwithstanding the obvious importance and exculpatory value of this information, the Defendant Officers failed to disclose it to the prosecution or defense.

> **ANSWER:**   Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 30 of plaintiff's complaint.

31.   The Defendant Officers similarly coerced other witnesses into giving false evidence and failed to disclose the fact of that coercion.

> **ANSWER:**   Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 31 of plaintiff's complaint.

32.   For example, witness Carmen Hearns told the Defendant Officers that she did not know anything about the shooting.  In an attempt to improperly apply pressure, the Defendant Officers threatened to take Ms. Hearns' children to the Department of Children and Family Services "DCFS") and re-active an old misdemeanor charge into a felony.

> **ANSWER:**   Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 32 of plaintiff's complaint.

33.   Defendant Officers told Hearns that if she did not "give them something", they were going to lock her up.

> **ANSWER:**   Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 33 of plaintiff's complaint.

34.   The Defendant Officers made good on their promise to lock up Ms. Hearns.  After two days in jail, Ms. Hearns agreed to sign a fabricated statement that the Defendant Officers had pre-written, which falsely inculpated ANDERSON, Ross, and Johnson in the crime.

> **ANSWER:**   Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 34 of plaintiff's complaint.

35.   Similarly, the Defendant Officers threatened and harassed Toni Gulley in an effort to destroy Ross' alibi.  Defendant Officers told Ms. Gulley that she must have been mistaken about the time that Mr. Ross came home, and that if she did not "cooperate" with the Defendant Officers, that they would call DCFS and report her for child neglect. The Defendant Officers

further created false reports saying that Ms. Gulley could have been wrong about the time that Mr. Ross came home on the night of the shooting.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 35 of plaintiff's complaint.

36. In addition, the Defendant Officers coerced and physically abused another witness when he threatened to change his story and expose the Defendant Officers' lies about how the Hanson shooting occurred. The Defendant Officers told him to testify consistent with those lies, and hit him and threatened to arrest his mother if he did not.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 36 of plaintiff's complaint.

37. Defendant Officers unlawfully concealed and destroyed any evidence demonstrating that two other people - Kefentse Taylor and Casel Montgomery - were the true perpetrators of the Demarcus Hanson shooting. In fact, Defendant Lindmark told the Defendant Officers to make a liar out of anyone that pointed the finger at Taylor and Montgomery, or discredited the police version that ANDERSON, Ross, or Johnson committed the crime. The Defendant Officers complied.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 37 of plaintiff's complaint.

38. Defendant Officers received highly detailed and credible information from a witness who was with Mr. Taylor and Mr. Montgomery on the night of the shooting and who directly implicated Mr. Montgomery and Mr. Taylor in the crime. Cassel and Montgomery confessed to numerous people that they had committed the DeMarcus Hansen murder. Taylor was later murdered with his confessed killer acknowledging openly that Taylor's murder was the result of Taylor "getting away" with the DeMarcus Hanson murder.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 38 of plaintiff's complaint.

39. Rather than investigate the information that implicated Taylor and Montgomery, the Defendant Officers met with at least one witness a second time and handed the witness a statement that the Defendant Officers had already written out for the witness to sign that falsely recanted the information he had provided about Mr. Montgomery's and Mr. Taylor's culpability for the Hanson shooting. To get him to sign off on that false and fabricated recantation, the Defendant Officers threatened the witness. That misconduct was never disclosed to the prosecution or the defense.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 39 of plaintiff's complaint.

40. Similarly, the Defendant Officers received information from another witness that Mr. Taylor had confessed to the Hanson shooting. Despite the obvious exculpatory value of that evidence, it was buried and never turned over to the prosecutor or to ANDERSON's criminal defense attorneys. The Defendant Officers told the witness that if his information was not about ANDERSON, Ross, or Johnson, the police did not want to hear it.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 40 of plaintiff's complaint.

41. As a result, Plaintiffs were wrongfully prosecuted and convicted, and the real killers - Mr. Taylor and Mr. Montgomery - were never brought to justice for this crime.

**ANSWER:** Palmer is without sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 41 of plaintiff's complaint.

42. Mr. ANDERSON was completely innocent of the Demarcus Hansen shooting and was nowhere nearby at the time it occurred. Earlier in the night, ANDERSON had been visiting with friends and going to a nightclub. He was home before the shots that killed DeMarcus

Hansen were ever fired.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and makes no answer to paragraph 42 of plaintiff's complaint.

43. At the time of the shooting, ANDERSON and Johnson were together at ANDERSON's home. While there, Mr. Johnson made several documented phone calls to his friend trying to find a place to stay that evening because he been fighting with his girlfriend. Those documented calls occurred between 2:46 a.m. and 2:53 a.m. The DeMarcus Hansen shooting occurred at 2:53 a.m.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and makes no answer to paragraph 43 of plaintiff's complaint.

44. It is uncertain what exact role ANDERSON is even alleged to have performed in the DeMarcus Hansen shooting. No witness ever placed him in possession of a firearm in connection with the shooting. ANDERSON's now-vacated conviction was based upon an "accountability theory".

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and makes no answer to paragraph 44 of plaintiff's complaint.

45. During the course of the investigation, ANDERSON was offered a plea agreement which would have required him to falsely implicate Johnson and Ross in the shooting. Has he done so he would have been granted probation and never served a day in prison. He refused to join the Defendant Officers' scheme to manufacture evidence and maintained his innocence.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and makes no answer to paragraph 45 of plaintiff's complaint.

46. As a result of the Defendants' misconduct, ANDERSON was convicted of first-degree murder and sentenced to 50 years in prison.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 46 of plaintiff's complaint.

47. During ANDERSON's trial, the Defendants not only pressured Mr. Brown and Mr. Dowthard to testify consistent with their false and fabricated statements, but also testified falsely themselves in order to conceal their unlawful actions.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 47 of plaintiff's complaint.

48. ANDERSON's conviction was obtained as a direct and proximate result of the Defendants, and each of them, falsely manufacturing testimony, threatening witnesses favorable to ANDERSON to provide false information, and withholding exculpatory evidence - including a third party confession of the real killer. All of this was done in an intentional effort to shortcut the investigatory process and frame ANDERSON for a crime they did not commit.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 48 of plaintiff's complaint.

49. Absent the Defendants', and each of their, misconduct, ANDERSON would not have been prosecuted or convicted.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 49 of plaintiff's complaint.

50. ANDERSON filed a post-conviction petitions alleging police misconduct and actual innocence. During these proceedings, Defendant Doug Palmer came forward and confessed to a host of misconduct that violated ANDERSON's right to due process, a confession that he has stood by despite being attacked by his former colleagues and threatened with perjury.

**ANSWER:** Palmer admits that he provided sworn testimony during post-conviction proceedings in the circuit court but otherwise invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 50 of plaintiff's complaint.

51. During post-conviction proceedings, the real killer was confronted on the stand with his wrongdoing. Rather than deny involvement or even answer questions about his whereabouts on the night of the shooting, he invoked his Fifth Amendment rights asserting a legitimate concern that truthful answers would subject him to criminal liability for the DeMarcus Hanson shooting.

   **ANSWER:**   Palmer is without sufficient information or knowledge to form a belief as to the truth of the allegations of paragraph 51 of plaintiff's complaint.

52. During these proceedings, when confronted with the fact that he had lied at the urging of the Defendant Police Officers, Alex Dowthard invoked his Fifth Amendment rights asserting a legitimate concern that truthful answers would subject him to criminal liability.

   **ANSWER:**   Palmer invokes his Fifth Amendment privilege against self-incrimination and makes no answer to paragraph 52 of plaintiff's complaint.

53. During proceedings on those post-conviction petitions, Defendant Palmer admitted to misconduct that he and the Defendant Officers committed in blatant violation of ANDERSON's constitutional rights. Defendant Palmer testified to the same during the Plaintiffs' post-conviction evidentiary hearing.

   **ANSWER:**   Palmer admits that he provided sworn testimony during post-conviction proceedings in the circuit court but otherwise invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 53 of plaintiff's complaint.

54. Based upon the obvious unfairness involved in ANDERSON's trial and subsequent conviction, his conviction was finally vacated by Court Order on March 19, 2013.

   **ANSWER:**   Palmer admits that on March 19, 2013, the circuit court entered an order granting plaintiff a new trial but otherwise invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 54 of plaintiff's complaint.

55.     ANDERSON wrongfully spent over 11 years in prison. Though he has been released pending a possible new trial, he remains on home detention and is still charged with the DeMarcus Hansen murder.

    **ANSWER:**     Palmer admits, on information and belief, that plaintiff is currently free on bond but otherwise invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 55 of plaintiff's complaint.

56.     The constitutional injuries that Plaintiffs suffered were caused by the policies and practices of the Rockford Police Department.

    **ANSWER:**     Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 56 of plaintiff's complaint.

57.     In particular, there was a "code of silence" that permeated the Department. As Defendant Palmer testified, that code meant "[k]eep your mouth shut and do what you're told." In other words, Rockford police officers are taught to look the other way and acquiesce when fellow officers are committing misconduct; under no circumstances were officers to provide adverse information against a fellow officer, even when injustice resulted.

    **ANSWER:**     Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 57 of plaintiff's complaint.

58.     As a result of that code of silence, Rockford police officers are not properly supervised or disciplined in any way. Officers are allowed to continue to commit misconduct with impunity, including the type of misconduct alleged herein.

    **ANSWER:**     Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 58 of plaintiff's complaint.

59.     Within the Rockford Police Department, there was a policy and practice of taking short cuts to solve criminal investigations, including by fabricating statements, coercing witnesses and withholding exculpatory and impeachment evidence.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 59 of plaintiff's complaint.

60. This policy and practice repeated itself in numerous criminal investigations conducted by the Rockford Police Department. Defendant Palmer admitted under oath that misconduct was rampant and widespread within the Rockford Police Department.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 60 of plaintiff's complaint.

61. Despite notice to (and often involvement of) policymakers in the above-described unconstitutional policies and practices, there was no effort to rectify any such misconduct. The City of Rockford and officials within the Department failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct. They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Plaintiffs' ongoing injuries.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 61 of plaintiff's complaint.

62. The policies and practices described in the paragraphs herein were consciously approved by City of Rockford policymakers who were deliberately indifferent to the violations of constitutional rights described herein. Accordingly, the Rockford Police Department acquiesced in, authorized, tolerated, affirmed, and or ratified, the unconstitutional actions of the Defendant Officers.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 62 of plaintiff's complaint.

63. The City's failure to train its officers effectively condones, ratifies, and sanctions the kind of misconduct that the Defendant Officers committed against ANDERSON in this case. Constitutional violations such as occurred in this case are encouraged and facilitated as a

result of the City's practices and *de facto* policies, as alleged herein.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 63 of plaintiff's complaint.

64. City of Rockford police officers who manufactured criminal cases against individuals such as ANDERSON had every reason to know that they not only enjoyed *de facto* immunity from criminal prosecution and/or Departmental discipline, but that they also stood to be rewarded for closing cases no matter what the costs. In this way, this system proximately caused abuses, such as the Defendant Officers' misconduct alleged herein.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 64 of plaintiff's complaint.

65. The above-referenced policies and practices were the proximate cause of the constitutional injuries that ANDERSON sustained, as described more fully in Damages portion of this Complaint.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 65 of plaintiff's complaint.

## COUNT I
*Manufacture of Fabricated and Perjured Testimony in violation of 42 U.S.C. § 1983*

66. Plaintiff incorporates by reference paragraphs 1 through 64 as if set forth herein verbatim.

> **ANSWER:** Palmer incorporates his answers to paragraphs 1 through 64 of plaintiff's complaint as his answer to paragraph 66 of plaintiff's complaint.

67. This Count is authorized by 42 U.S.C. § 1983 and the Constitution of the United States, including the First, Fourth, Fifth, Sixth, and Fourteenth Amendments thereto.

> **ANSWER:** Palmer admits that plaintiff's action is brought pursuant to 42 U.S.C. § 1983 and alleges various constitutional violations.

68. During the course of their investigation of the DeMarcus Hansen shooting, the Defendant Officers, and each of them, solicited, procured through intimidation, coercion, coaching,

threats of prosecution, undisclosed promises of leniency, and other unlawful means, witnesses against ANDERSON to provide false statements and perjured testimony against ANDERSON.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 68 of plaintiff's complaint.

69. Defendant Officers, and each of them, concealed how they obtained manufactured evidence and false witness testimony.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 69 of plaintiff's complaint.

70. At all times relevant to the events described in this Complaint, the Defendant Officers, and each of them, were state actors acting under the color of state law and within the scope of their employment and duties.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 70 of plaintiff's complaint.

71. The unofficial or official policy, practice, custom, or procedure regarding fabricated testimony and perjured testimony of Defendant City of Rockford, Illinois, as implemented by the Defendant Officers, and each of them, was the moving force behind the violations of ANDERSON's constitutional rights and constituted deliberate indifference as attributable to the City of Rockford itself as alleged in this count.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 71 of plaintiff's complaint.

72. Defendant City of Rockford, Illinois, through its policy makers, failed to train and/or supervise its police officers regarding fabricated and perjured testimony and this was a moving force behind the violations of ANDERSON's constitutional rights and constituted deliberate indifference as attributable to the City of Rockford, Illinois itself as alleged in this

count.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 72 of plaintiff's complaint.

73. At the time of the witnesses, including but not limited to Dowthard and Brown, pre-probable cause statements, pre-trial statements, and trial testimony Defendant Police Officers, and each of them, knew the witnesses were lying and did nothing to stop or interfere with the miscarriage of justice that resulted.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 73 of plaintiff's complaint.

74. The above-described acts of the Defendant Officers, and each of them, constituted an intentional violation of ANDERSON's freedom of association guaranteed him by the First Amendment to the United States Constitution and 42 U.S.C. § 1983, his rights to due process, a fair trail, and equal protection guaranteed him by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and his rights against unreasonable seizures of his body as guaranteed him by the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 74 of plaintiff's complaint.

75. As a direct and proximate result of the acts, omissions, and constitutional violations alleged in this count, ANDERSON suffered the incarceration and restrictions on his liberty as set out above; was deprived of his constitutional rights; suffered past and will suffer future severe physical injuries, pain and suffering, mental anguish, and emotional distress; and suffered past and will suffer future reputational and economic loss as a result of his wrongful arrest, prosecution, and incarceration for the DeMarcus Hansen murder, all to his damage

in amounts to be proven at trial.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 75 of plaintiff's complaint.

76. In doing the acts and omissions alleged above, the Defendant Officers, and each of them,

acted with a wanton disregard for the rights, needs, feelings of ANDERSON and by reason

thereof, ANDERSON demands exemplary and punitive damages against those Defendant

Officers in an amount to be proven at trial.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 76 of plaintiff's complaint.

### COUNT II
*Withheld Material Evidence - Brady and Giglio Violations - in violation of 42 U.S.C. § 1983*

77. Plaintiff incorporates by reference paragraphs 1 through 76 as if set forth herein verbatim.

> **ANSWER:** Palmer incorporates his answers to paragraphs 1 through 76 of plaintiff's complaint as his answer to paragraph 77 of plaintiff's complaint.

78. This Count is authorized by 42 U.S.C. § 1983 and the Constitution of the United States,

including the First, Fourth, Fifth, Sixth, and Fourteenth amendments thereto.

> **ANSWER:** Palmer admits that plaintiff's action is brought pursuant to 42 U.S.C. § 1983 and alleges various constitutional violations.

79. Before Dowthard and Brown made their false pre-probable cause and pretrial statements

referred to above against ANDERSON, Defendant Police Officers, and each of them,

became aware of evidence that pointed to viable alternative suspects for the DeMarcus

Hansen murder by the names of Cassel Montgomery and Kefentse Taylor.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 79 of plaintiff's complaint.

80. Defendant Officers, and each of them, hid exculpatory and other evidence of government

agreements with witnesses known to them before, during, and after fabricating probable

cause to arrest and prosecute ANDERSON.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 80 of plaintiff's complaint.

81. Before, during, and after ANDERSON's 2002 Trial for the DeMarcus Hansen murder, Defendant Officers failed to produce for ANDERSON or his counsel, evidence relating to the existence or viability of Cassel Mongomery or Kefentse Taylor as alternative suspects for the DeMarcus Hanson murder; hid, refused, and/or failed to identify or produce for ANDERSON or his counsel any evidence of government agreements with witnesses known to them; hid, refused, and/or failed to identify or produce for ANDERSON or his counsel any evidence of coercion of witnesses by means of threats of prosecution, violence, or other methods designed to fabricate testimony, all in violation of ANDERSON's rights to due process and to prevent ANDERSON from defending himself against the false charge that he participated in DeMarcus Hanson's murder.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 81 of plaintiff's complaint.

82. The acts and omissions alleged in this Count, Defendant Police Officers, and each of them, were motivated by prejudice against ANDERSON because of his race.

> **ANSWER:** Palmer denies the allegations of paragraph 82 of plaintiff's complaint.

83. At all times relevant to the events described in this Complaint, Defendant Police Officers, and each of them, were state actors acting under the color of state law and within the scope of their duties.

> **ANSWER:** Palmer admits that during the investigation of the DeMarcus Hanson murder, he was employed by the City of Rockford as a police officer and detective but otherwise invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 83 of plaintiff's complaint.

84. The unofficial or official policy, practice, custom, or procedure regarding withholding exculpatory evidence of Defendant City of Rockford, Illinois, as implemented by the Defendant Officers, and each of them, was them moving force behind the violations of ANDERSON's constitutional rights and constituted deliberate indifference as attributable to the City of Rockford itself as alleged in this count.

   **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 84 of plaintiff's complaint.

85. Defendant City of Rockford, Illinois, through its policy makers, failed to train and/or supervise its police officers regarding withholding exculpatory evidence and this was a moving force behind the violations of ANDERSON's constitutional rights and constituted deliberate indifference as attributable to the City of Rockford, Illinois itself as alleged in this count.

   **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 85 of plaintiff's complaint.

86. Defendants, and each of them, in subsequent post-trial proceedings involving ANDERSON (and Johnson and Ross) in sworn testimony, depositions, and/or signed statements, continued to abide by the above-referenced policies, practices, customs, or procedures by denying the existence of the viable alternative suspects; evidence of government agreements with witnesses known to them; and any evidence of coercion of witnesses by means of threats of prosecution, violence, or other methods designed to fabricate testimony.

   **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 86 of plaintiff's complaint.

87. Failure to preserve and disclose the exculpatory evidence, evidence of agreements with witnesses, and evidence of illegal witness coercion and fabricated testimony was a direct and

proximate cause of the violation of ANDERSON's constitutional rights, his wrongful arrest, conviction, 50 year sentence, and nearly 12 years of wrongful incarceration.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 87 of plaintiff's complaint.

88. The above-described acts of the Defendant Officers, and each of them, constituted an intentional violation of ANDERSON's freedom of association guaranteed him by the First Amendment to the United States Constitution and 42 U.S.C. § 1983, his rights to due process, a fair trail, and equal protection guaranteed him by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and his rights against unreasonable seizures of his body as guaranteed him by the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 88 of plaintiff's complaint.

89. As a direct and proximate result of the acts, omissions, and constitutional violations alleged in this count, ANDERSON suffered the incarceration and restrictions on his liberty as set out above; was deprived of his constitutional rights; suffered past and will suffer future severe physical injuries, pain and suffering, mental anguish, and emotional distress; and suffered past and will suffer future reputational and economic loss as a result of his wrongful arrest, prosecution, and incarceration for the DeMarcus Hansen murder, all to his damage in amounts to be proven at trial.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 89 of plaintiff's complaint.

90. In doing the acts and omissions alleged above, the Defendant Officers, and each of them, acted with a wanton disregard for the rights, needs, feelings of ANDERSON and by reason

thereof, ANDERSON demands exemplary and punitive damages against those Defendant

Officers in an amount to be proven at trial.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 90 of plaintiff's complaint.

### COUNT III
*Failure to Intervene to prohibit or halt the violation of Constitutional Rights in violation of 42 U.S.C. § 1983*

91. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

> **ANSWER:** Palmer incorporates his answers to paragraphs 1 through 90 of plaintiff's complaint as his answer to paragraph 91 of plaintiff's complaint.

92. This Count is authorized by 42 U.S.C. § 1983 and the Constitution of the United States,

including the First, Fourth, Fifth, Sixth, and Fourteenth Amendments thereto.

> **ANSWER:** Palmer admits that plaintiff's action is brought pursuant to 42 U.S.C. § 1983 and alleges various constitutional violations.

93. In the manner described above, during the Constitutional violations described above, one or

more of the Defendant Officers (including John Does One through Nine) stood by without

intervening to prevent the misconduct.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 93 of plaintiff's complaint.

94. As a result of the Defendant Officers' failure to intervene to prevent the violation of

ANDERSON's constitutional rights, ANDERSON suffered damages, including physical

sickness and injury, as well as emotional distress. These Defendants had a reasonable

opportunity to prevent this harm, but failed to do so.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 94 of plaintiff's complaint.

95. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to ANDERSON's constitutional rights.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 95 of plaintiff's complaint.

96. The above-described acts of the Defendant Officers, and each of them, constituted an intentional violation of ANDERSON's freedom of association guaranteed him by the First Amendment to the United States Constitution and 42 U.S.C. § 1983, his rights to due process, a fair trail, and equal protection guaranteed him by the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and his rights against unreasonable seizures of his body as guaranteed him by the Fourth Amendment to the United States Constitution and 42 U.S.C. § 1983.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 96 of plaintiff's complaint.

97. The Defendant Officers' misconduct described in this Count was undertaken pursuant to Rockford's policy and practice in the manner described in preceding paragraphs.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 97 of plaintiff's complaint.

**COUNT IV**
*Conspiracy to violate Constitutional Rights in violation*
*of 42 U.S.C. § 1983*

98. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

> **ANSWER:** Palmer incorporates his answers to paragraphs 1 through 97 of plaintiff's complaint as his answer to paragraph 98 of plaintiff's complaint.

99. This Count is authorized by 42 U.S.C. § 1983 and the Constitution of the United States, including the First, Fourth, Fifth, Sixth, and Fourteenth Amendments thereto.

**ANSWER:** Palmer admits that plaintiff's action is brought pursuant to 42 U.S.C. § 1983 and alleges various constitutional violations.

100. Prior to arresting ANDERSON, the Defendant Officers reached an agreement amongst themselves to frame Plaintiffs for the crime, and to thereby deprive Plaintiffs of their constitutional rights, all as described in the various Paragraphs of this Complaint.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 100 of plaintiff's complaint.

101. Before and after ANDERSON's conviction, each of the Defendant Officers further conspired, and continue to conspire, to deprive Plaintiffs of exculpatory materials to which they are lawfully entitled and which would have led to their more timely exoneration of the false charges as described in the various Paragraphs of this Complaint.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 101 of plaintiff's complaint.

102. In this manner, the Defendant Officers, acting in concert with each other and with other unknown co-conspirators, including persons who are and who are not members of the Rockford Police Department, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 102 of plaintiff's complaint.

103. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

**ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 103 of plaintiff's complaint.

104. As a direct and proximate result of the illicit prior agreement referenced above, ANDERSON's rights were violated, and he suffered physical injury and sickness, and severe

emotional distress and anguish, as is more fully alleged above.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 104 of plaintiff's complaint.

105. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others and by reason thereof, ANDERSON demands exemplary and punitive damages against those Defendant Officers in an amount to be proven at trial.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 105 of plaintiff's complaint.

106. The Defendant Officers' misconduct described in this Count was undertaken pursuant to the policy and practice of the Rockford Police Department in the manner described more fully in preceding paragraphs, and was tacitly ratified by policy-makers for Rockford with final policymaking authority.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 106 of plaintiff's complaint.

107. As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with other named and unnamed individuals, as well as under color of law and within the scope of their employment, deprived ANDERSON of his constitutional right to a fair trial.

> **ANSWER:** Palmer invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 107 of plaintiff's complaint.

## DAMAGES

108. Plaintiffs both spent over a decade in prison for a crime that they did not commit.

> **ANSWER:** Palmer admits that plaintiff spent over a decade in detention but otherwise invokes his Fifth Amendment privilege against self-incrimination and provides no answer to paragraph 108 of plaintiff's complaint.

109.    During their wrongful incarceration, the Plaintiffs were stripped of the various pleasures of

basic human experience, from the simplest to the most important, which all free people enjoy

as a matter of right. They missed out on the ability to raise their children, share holidays,

births, funerals and other life events with loved ones, and the fundamental freedom to live

one's life as an autonomous human being.

    **ANSWER:**    Palmer does not have sufficient information or knowledge to form a belief as
    to the truth of the allegations concerning damages and otherwise invokes his
    Fifth Amendment privilege against self-incrimination and provides no
    answer to paragraph 109 of plaintiff's complaint.

110.    As a result of their wrongful incarcerations, ANDERSON must now attempt to rebuild his

life all without the benefit of a decade of life experience that ordinarily equip adults for that

task.

    **ANSWER:**    Palmer does not have sufficient information or knowledge to form a belief as
    to the truth of allegations concerning damages and otherwise invokes his
    Fifth Amendment privilege against self-incrimination and provides no
    answer to paragraph 110 of plaintiff's complaint.

111.    ANDERSON has suffered tremendous damage, including physical sickness and injury and

emotional damages, all proximately caused by Defendants' misconduct.

    **ANSWER:**    Palmer does not have sufficient information or knowledge to form a belief as
    to the truth of allegations concerning damages and otherwise invokes his
    Fifth Amendment privilege against self-incrimination and provides no
    answer to paragraph 111 of plaintiff's complaint.

                                    /s/  Stephen E. Balogh
                            Attorney for defendant,
                            DOUG PALMER
                            WilliamsMcCarthyLLP
                            120 W. State St., Suite 400
                            P.O. Box 219
                            Rockford, IL  61105-0219
                            Telephone:  (815) 987-8946
                            Facsimile:  (815) 968-0019
                            E-mail:  sbalogh@wilmac.com

## <u>CERTIFICATE OF LAWYER</u>

The undersigned hereby certifies that on May 5, 2015, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Attorney Steven A. Greenberg
Steven A. Greenberg, Ltd.
53 W. Jackson, Suite 1260
Chicago, IL  60604

Attorney Kerry F. Partridge
City of Rockford Legal Department
425 East State Street
Rockford, IL  61104

Attorney Ron A. Barch
Cicero, France, Barch & Alexander
6323 East Riverside Blvd.
Rockford, IL  61114

Attorney R.C. Pottinger
Barrick, Switzer, Long, Balsley & Van Evera
6833 Stalter Drive
Rockford, IL  61108

    /s/  Stephen E. Balogh
Attorney for defendant,
DOUG PALMER
WilliamsMcCarthy LLP
120 W. State St., Suite 400
P.O. Box 219
Rockford, IL  61105-0219
Telephone:  (815) 987-8946
Facsimile:  (815) 968-0019
E-mail:  sbalogh@wilmac.com