IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISON

| | | |
|---|---|---|
| TYJUAN ANDERSON, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 15-cv-50065 |
| | ) | |
| CITY OF ROCKFORD, DOUG PALMER, | ) | |
| DOMINIC IASPARRO, JOSEPH STEVENS, | ) | |
| JAMES RANDALL, SCOTT MASTROIANNI, | ) | |
| THEO GLOVER, KURT WHISENHAND, TORRY REGEZ, | ) | |
| SHERYL LINDMARK AS THE INDEPENDENT EXECUTOR | ) | |
| OF THE ESTATE OF GREGORY LINDMARK, AND | ) | |
| UNKNOWN EMPLOYEES OF THE CITY OF | ) | |
| ROCKFORD, | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

Plaintiff, TYJUAN ANDERSON, by his undersigned attorney, complains of Defendants, CITY OF ROCKFORD, DOUG PALMER, DOMINIC IASPARRO, JOSEPH STEVENS, JAMES RANDALL, SCOTT MASTROIANNI, THEO GLOVER, KURT WHISENHAND, TORRY REGEZ, SHERYL LINDMARK AS THE INDEPENDENT EXECUTOR OF THE ESTATE OF GREGORY LINDMARK, AND UNKNOWN EMPLOYEES OF THE CITY OF ROCKFORD as follows:

### Introduction

1.    Plaintiff Tyjuan Anderson spent years in prison and on other forms of detention for the murder of Demarcus Hanson.

2.    Anderson did not commit the crime.

3. Mr. Anderson along with his criminal co-defendants (now themselves plaintiffs) are innocent.

4. Mr. Anderson was convicted after the Defendants engaged in a smorgasbord of egregious wrongdoing, including fabricating statements, threatening witnesses and withholding highly exculpatory evidence – including a third party confession of the real killer – in an effort to shortcut the investigatory process and frame Plaintiff for a crime he did not commit.

5. Never giving up on proving his innocence, Mr. Anderson filed Post-Conviction Petitions.

6. During the Post-Conviction proceedings, Defendant Doug Palmer came forward and confessed to a host of misconduct that violated Plaintiffs' right to due process – a confession that he has stood by despite being attacked by his former colleagues and threatened with perjury.

7. The Defendants, in their zeal to frame Anderson, purposely ignored compelling evidence that two other individuals, Kefentse Taylor and Casel Montgomery, actually committed the shooting. Taylor has since died.

8. Montgomery was confronted on the stand with his wrongdoing. Rather than answer questions about his whereabouts on the night of the shooting, he invoked his Fifth Amendment rights because he had a legitimate concern that testifying would subject him to criminal liability for the Hanson murder.

9.     On March 19, 2013, after a lengthy evidentiary hearing during which Mr. Anderson presented overwhelming evidence of his innocence, the conviction was vacated and a new trial ordered.

10.     On November 6, 2015, after a two-week retrial, Mr. Anderson was acquitted of all charges.

### Parties-Jurisdiction and Venue

11.     Mr. Tyjuan Anderson is a 33-year-old resident of Rockford, Illinois.  Mr. Anderson is the father of a young child who was born during his 2015 trial.

12.     Mr. Anderson was jointly charged and tried with Anthony Ross and Lumont Johnson. They too were acquitted. (Collectively they will be referred to as "Plaintiffs").

13.     At all times relevant hereto, Defendants Doug Palmer, Dominic Iasparro, Joseph Stevens, James Randall, Scott Mastroianni, Theo Glover, Gregory Lindmark, Kurt Whisenhand and Torry Regez (hereinafter "Defendant Officers") were police officers in the Rockford Police Department.  All are sued in their individual capacities, and acted under color of law and within the scope of their employment during the investigation and trials of the murder at issue.

14.     The true names and capacities of John Does One though Nine are presently unknown to the Plaintiff. Plaintiff is informed and believes, and based on such belief alleges that each of said John Does is or was at times relevant

responsible for damages suffered by ANDERSON. Leave of Court will be sought to amend this complaint to include the true names and capacities of John Does One through Nine as soon as such information becomes known to ANDERSON.

15.     Defendant City of Rockford is an Illinois municipal corporation. The City of Rockford is or was the employer of each of the Defendant Officers.

16.     This is a civil action seeking money damages on behalf of Plaintiff Tyjuan Anderson (herein "ANDERSON"), under 42 U.S.C. § 1983 for violations of ANDERSON'S constitutional rights under the First, Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

17.     This Court has original jurisdiction of ANDERSON'S causes of action under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. §§ 1983.

18.     Venue is proper with this Court under 28 U.S.C. 1391 (b) as a substantial part of the events and omissions giving rise to the claims asserted herein occurred in the Northern District of Illinois.

19.     On March 19, 2013, the Order granting ANDERSON'S Post-Conviction relief was entered, vacating his conviction. The decision was affirmed on appeal by the Appellate Court of Illinois, Second District, on November 14, 2014.

### The Crime

20.     On April 14, 2002, eight-year-old Demarcus Hanson was killed by shots that were fired through a window in his grandmother Estella Dowthard's house.

21.     Estella Dowthard called 911 at 2:53 a.m. to report the shooting.

4

22.     According to the police, the shooting was a misfire; the shooters were aiming at Estella Dowthard's son, Alex Dowthard, but accidentally hit Demarcus Hanson.

## Plaintiffs' Innocence

23.     None of the other defendants were involved with this crime. In fact, they were nowhere near the house at the time it occurred.

24.     Earlier in the night, Plaintiffs had been with each other visiting with friends and going to a nightclub.

25.     At the time of the shooting, all three men were elsewhere: Mr. Johnson and Mr. Anderson were together at Mr. Anderson's house, and Mr. Ross was at his own home.

26.     Mr. Johnson made several phone calls to his friend trying to find a place to stay that evening because he had had a fight with his girlfriend.  The calls occurred between 2:46 a.m. and 2:53 a.m.

27.     Mr. Ross was at home when the shooting occurred, with his then-girlfriend Toni Gulley and their infant baby. |

## The Police Investigation

28.     There was never any physical evidence linking Plaintiffs to this crime.

29.    None of their fingerprints or DNA were found at the crime scene.

30.    The Defendant Officers spoke to Plaintiffs on the day of the shooting.

31.    When Mr. Ross, Mr. Johnson and Mr. Anderson learned that the police wanted to speak with them, each went to the police station and told the Defendant Officers about their whereabouts – that they were elsewhere and innocent.

32.    Mr. Johnson, Mr. Ross and Mr. Anderson were each released from custody that day.

33.    Javarus Williams, the fourth person that Anderson, Ross, and Johnson were with on the night of the shooting, also voluntarily came to the police station on the day of the shooting. Williams gave a statement consistent with what Anderson, Ross, and Johnson had already told the police. He corroborated the fact that the four were together that night and that they then went home.

34.    Also on the day of the shooting, the Defendant Officers spoke to the suspected target of the shooting, Alex Dowthard.

35.    Mr. Dowthard, who was then on parole, told the Defendant Police Officers that he was not present at the time of the shooting and could not identify the shooters.

36.    Mr. Dowthard admitted to possessing and shooting a firearm in a separate incident, and therefore was taken into custody on a parole violation.

37.     Mr. Dowthard remained in custody until he changed his story.

38.     Shortly before the Demarcus Hanson shooting, Alex Dowthard had tried to frame ANDERSON, Ross, and Johnson for a separate incident in which Dowthard was shot.

39.     Dowthard's attempt to falsely frame ANDERSON, Ross, and Johnson for the shooting failed when the police investigation confirmed that Dowthard had been shot by a member of his own street gang.

40.     On April 24, 2002, Antowan Lambert, went to the police station and told detectives that Ross and Johnson were responsible for the murder of Demarcus Hanson.

41.     Lambert claimed that he had gotten this information from Lataurean Brown, who he said was with Alex Dowthard on the night of the shooting.

42.     Lambert was the leader of Dowthard's gang.

43.     After speaking with Antowan Lambert, the police called Lataurean Brown.

44.     Initially Brown did not corroborate Lambert's account of the shooting.

45.     Still, Brown told the Defendant Officers that Dowthard had shot at a blue suburban earlier that night, and that after that shooting, he and Dowthard drove to Estella Dowthard's home where Alex Dowthard hid his gun.

46. Brown did not initially tell Defendant Police Officers that he witnessed the shooting at Estella Dowthard's house, or that he saw ANDERSON, Ross or Johnson at Estella Dowthard's house.

47. From that point the investigation went cold.

## The Defendants' Misconduct

48. Determined to "solve" the Hanson murder, the Defendant Officers engaged in a campaign of misconduct to frame Plaintiffs for a crime they did not commit.

49. To do so, the Defendant Officers fabricated witness statements, coerced, hit and threatened witnesses, and withheld exculpatory evidence that not only would have explained why witnesses were falsely incriminating Plaintiffs, but also the identity of the real shooters.

50. That misconduct was never disclosed to the prosecutor or Plaintiffs' defense attorneys.

51. Indeed, the prosecutor stated that had he known of this egregious litany of wrongdoing, it would have set off a cataclysmic chain of events, unraveling the criminal investigation and Plaintiffs' prosecution.

## *The Defendants Coerce and manufacture the Key Witnesses and Fabricate Their Statements*

52. The Defendant Officers coerced and fabricated the statements of the State's key witnesses.

8

53.     To induce Lataurean Brown to alter his statement that he did not see the shooters, the Defendant Officers threatened him.

54.     The Officers fabricated a statement for Brown to sign that would support their "theory" of the shooting.

55.     Defendant Officers further suborned perjury by instructing Brown to testify consistent with his police statement at Plaintiffs' trials even though it was false and fabricated.

56.     Alex Dowthard was similarly manipulated.

57.     When questioned at the beginning of the investigation, Mr. Dowthard repeatedly told the Defendant Officers that he did not see the shooters.

58.     The Defendant Officers threatened Mr. Dowthard that if he did not change his story, they would keep him imprisoned on a parole hold and bring additional criminal charges against him.

59.     The Defendant Officers also beat Mr. Dowthard.

60.     Mr. Dowthard was then provided with details of the crime.

61.     Dowthard falsely implicated Plaintiffs in the crime.

62.     When confronted with evidence that he gave false statements and testimony about the shooting, at both the post-conviction evidentiary hearing and 2015 trial, he invoked his Fifth Amendment right.

63.     To compound this unconstitutional conduct, the Defendant Officers buried evidence that both thoroughly impeached Mr. Brown's and Mr. Dowthard's false and fabricated statements that Plaintiffs committed the Hanson

9

murder, and would have corroborated the fact that neither saw the offenders and could not identify them.

64.     In particular, the Defendant Officers spoke to Mr. Brown's cousin.  Mr. Brown's cousin told the Defendant Officers that right after the shooting, she spoke to Mr. Brown and Mr. Dowthard at Concord Commons.  Mr. Brown and Mr. Dowthard told her that they did not see who committed the crime.

65.     Notwithstanding the obvious importance and exculpatory value of this information, the Defendant Officers failed to disclose it to the prosecution or defense.

### The Defendants Coerce and Threaten Other Witnesses

66.     The Defendant Officers similarly coerced other witnesses into giving false evidence and failed to disclose the fact of those coercions.

67.     For example, the Defendant Officers threatened to take witness Carmen Hearns' children to the Department of Children and Family Services ("DCFS") and re-activate an old misdemeanor charge into a felony.

68.     Even though Ms. Hearns told the Defendant Officers that she did not know anything about the shooting, the Defendant Officers told her that if she did not give them something, they were going to lock her up.

69.     The Defendant Officers made good on their promise to "lock her up".  After two days in jail, Ms. Hearns agreed to sign a fabricated statement that the Defendant Officers had pre-written, which falsely inculpated Plaintiffs in the crime.

70.     Similarly, the Defendant Officers threatened and harassed Toni Gulley in an effort to destroy Mr. Ross' alibi. The Defendant Officers told Ms. Gulley that she must have been mistaken about the time that Mr. Ross came home, and that if she did not "cooperate" with the Defendant Officers, they would call DCFS and report her for child neglect.  The Defendants further created false reports saying that Ms. Gulley could have been wrong when she provided the time that Mr. Ross came home.

71.     In addition, the Defendant Officers coerced and physically abused another witness when he threatened to change his story and expose the Defendant Officers' lies about how the Hanson shooting occurred.  The Defendant Officers told him to testify consistent with those lies, and hit him and threatened to arrest his mother if he did not.

### The Defendants Bury and Destroy Evidence
### Of the Identity of the Real Offenders

72.     The Defendant Officers unlawfully buried and destroyed any evidence demonstrating that two other people – Kefentse Taylor and Casel Montgomery – committed the crime.

73.     Defendant Lindmark told the other Defendant Officers to make a liar out of anyone that pointed the finger at Taylor and Montgomery, or discredited the police version that Plaintiffs and Mr. Anderson committed the crime. The Defendant Officers did just that.

74.     For example, the Defendant Officers received highly detailed and credible information from a witness who was with Mr. Taylor and Mr.

Montgomery on the night of the shooting and who directly implicated Mr.
Montgomery and Mr. Taylor in the crime.

75.     Rather than investigate the information that the witness
provided, the Defendant Officers met with the witness a second time.

76.     The Defendant Officers handed the witness a statement that the
Defendant Officers had already written out for the witness to sign, that falsely
recanted the information he had provided about Mr. Montgomery's and Mr. Taylor's
culpability for the Hanson shooting.

77.     To induce the witness to make the false and fabricated
recantation, the Defendant Officers threated the witness.  That misconduct was
never disclosed to the prosecution or the defense.

78.     The Defendant Officers received information from a second
witness that Mr. Taylor had confessed to the Hanson shooting.

79.     Despite the obvious exculpatory value of that evidence, it was
buried and never turned over to the prosecutor or to Plaintiff's criminal defense
attorneys.

80.     The Defendant Officers told this second witness that if his
information was not about Plaintiffs they did not want to hear it.

## Plaintiffs' Wrongful Conviction

81.     As a result, Plaintiffs were wrongfully prosecuted and convicted, and the real killers – Mr. Taylor and Mr. Montgomery – were never prosecuted for this crime.

82.     As a result of the Defendants' misconduct, Plaintiffs were convicted of first-degree murder and sentenced to 50 years in prison.

83.     During the trial, the Defendants not only suborned perjury – e.g., telling Mr. Brown and Mr. Dowthard to testify consistent with their false and fabricated statements – but also committed perjury themselves by lying about their conduct during the investigation, their role in procuring false statements, and about the reliability of various statements obtained in the investigation.

84.     Without the Defendants' misconduct, Plaintiffs would not have been prosecuted or convicted.

## Plaintiffs' Exoneration

85.     Never giving up hope and remaining steadfast in their protestations of innocence, the Plaintiffs filed Post-Conviction Petitions challenging their convictions.

86.     During those proceedings Defendant Palmer admitted to a host of misconduct that he and the Defendant Officers committed in an effort to frame the Plaintiffs for a crime that they did not commit.

87.     Defendant Palmer testified to the same during the Plaintiffs' post-conviction evidentiary hearing.

88. On March 19, 2013, the Circuit Court granted Plaintiffs' post-conviction petitions, overturning their convictions, vacating their sentences and granting them new trials. That decision was affirmed on appeal.

89. During the course of the investigation, ANDERSON was offered a plea deal which would have required him to falsely implicate Johnson and Ross in the shooting. Had he done so, he would have been granted probation and never served a day in prison. He refused to join the Defendant Officers' scheme to manufacture evidence and maintained his innocence.

## Rockford's Code of Silence

90. The constitutional injuries that Plaintiff suffered were caused by the policies and practices of the Rockford Police Department.

91. In particular, there was a "code of silence" that permeated the Department. As Defendant Palmer testified, that code meant "[k]eep your mouth shut and do what you're told." In other words, Rockford police officers are taught to look the other way and acquiesce when fellow officers are committing misconduct; under no circumstances were officers to provide adverse information against a fellow officer.

92. As a result of that code of silence, Rockford police officers are not properly supervised or disciplined in any way. To the contrary, officers are allowed to continue to commit misconduct with impunity, including the type of misconduct at issue here.

14

93.     Indeed, within the Rockford Police Department, there was a policy and practice of taking short cuts to solve criminal investigations, including by fabricating statements, coercing witnesses and withholding exculpatory and impeachment evidence.

94.     This policy and practice repeated itself in numerous criminal investigations conducted by the Rockford Police Department.  As Defendant Palmer has testified, that misconduct was widespread.

95.     Nonetheless, and despite notice to (and often involvement of) policymakers in the above-described unconstitutional policies and practices, there was no effort to rectify any such misconduct.  The City of Rockford and officials within the Department failed to act to remedy the abuses described in the preceding paragraphs, despite actual knowledge of the pattern of misconduct.  They thereby perpetuated the unlawful practices and ensured that no action would be taken (independent of the judicial process) to remedy Plaintiffs' ongoing injuries.

96.     The policies and practices described in the foregoing paragraphs were consciously approved by City of Rockford policymakers who were deliberately indifferent to the violations of constitutional rights described herein.

97.     Those policies and practices were the proximate cause of the constitutional injuries that Plaintiff sustained, as described more fully above.

98.     Moreover, The City's failure to train its officers effectively condones, ratifies, and sanctions the kind of misconduct that the Defendant Officers committed against Plaintiffs in this case.  Constitutional violations such as occurred

15

in this case are encouraged and facilitated as a result of the City's practices and *de facto* policies, as alleged above.

## Plaintiff's Damages

99.     Plaintiff spent over a decade in prison for a crime he did not commit.  He spent other time in the Winnebego County Jail and on home detention.

100.     During their wrongful incarceration, the Plaintiff was stripped of the various pleasures of basic human experience, from the simplest to the most important, which all free people enjoy as a matter of right.  He missed out on the ability to conceive and raise children, share holidays, births, funerals and other life events with loved ones, and the fundamental freedom to live one's life as an autonomous human being.

101.     As a result of his wrongful incarceration, Plaintiffs must now attempt to rebuild his life all without the benefit of over a decade of life experience that ordinarily equip adults for that task.

102.     Plaintiff has suffered tremendous damage, including physical sickness and injury and emotional damages, all proximately caused by Defendants' misconduct.

## Count I – Due Process

## 42 U.S.C. § 1983

103.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

104.    As described more fully above, the Defendant Officers, while acting individually, jointly, and in conspiracy with other named and unnamed individuals, as well as under color of law and within the scope of their employment, deprived Plaintiffs of their constitutional right to a fair trial.

105.    In the manner described more fully above, the Defendant Officers deliberately withheld exculpatory and impeachment evidence, fabricated false statements, reports and other evidence, and suborned perjury, thereby misleading and misdirecting the criminal prosecutions of Plaintiff.  Absent this misconduct, the prosecutions of Plaintiffs could not and would not have been pursued.

106.    The Defendant Officers' misconduct also directly resulted in the unjust criminal convictions of Plaintiff, thereby denying him their constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

107.    As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including, but not limited to, incarceration, physical sickness and injury, and emotional distress, as is more fully alleged above.

108.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

109.    The misconduct by the Defendant Officers described in this Count was undertaken pursuant to the policy and practice of the Rockford Police

17

Department, which Plaintiff was the victims of, and his injuries were proximately caused by a policy and practice on the part of the City of Rockford to pursue and secure false convictions through profoundly flawed investigations as described throughout this complaint.

110.    Specifically, during the relevant time period, a group of Rockford police officers, including some or all of the Defendant Officers herein, engaged in a systematic pattern of coercion, fabrication of evidence, withholding of exculpatory information, and other illegal tactics, the sum total of which completely corrupted the investigative process.

111.    This institutional desire to close cases through unconstitutional tactics regardless of actual guilt or innocence, in order to enhance police officers' personal standing in the Department, was known to the command personnel, who themselves participated in the practice.

112.    The above-described widespread practices, so well-settled as to constitute *de facto* policy in the Rockford Police Department during the time period at issue, were able to exist and thrive because municipal policymakers with authority over the same either concurred with the practices or exhibited deliberate indifference to the problem.

113.    The widespread practices described in the preceding paragraphs were allowed to take place because the City declined to implement sufficient training and/or any legitimate mechanism for oversight or punishment.  Indeed, the Department's system for investigating and disciplining police officers accused of the

type of misconduct that befell Plaintiffs was, and is, for all practical purposes, nonexistent. Indeed, the Department maintained a "code of silence" that effectively eliminated any form of accountability, discipline or oversight.

114. Rockford police officers who manufactured criminal cases against individuals such as Plaintiffs had every reason to know that they not only enjoyed *de facto* immunity from criminal prosecution and/or Departmental discipline, but that they also stood to be rewarded for closing cases no matter what the costs. In this way, this system proximately caused abuses, such as the Defendant Officers' misconduct at issue in this case.

## Count II - Failure to Intervene

## 42 U.S.C. § 1983

115. Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

116. In the manner described above, during the Constitutional violations described above, one or more of the Defendant Officers (including as-yet-unknown Police Officers) stood by without intervening to prevent the misconduct.

117. As a result of the Defendant Officers' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered damages, including physical sickness and injury, as well as emotional distress. These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

118.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

119.    The Defendant Officers' misconduct described in this Count was undertaken pursuant to Rockford's policy and practice in the manner described in preceding paragraphs.

## Count III - Conspiracy

## 42 U.S.C. § 1983

120.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

121.    Prior to arresting Plaintiff, the Defendant Officers reached an agreement amongst themselves to frame Plaintiffs for the crime, and to thereby deprive Plaintiffs of their constitutional rights, all as described in the various Paragraphs of this Complaint.

122.    In addition, before and after Plaintiff's conviction, each of the Defendant Officers further conspired, and continue to conspire, to deprive Plaintiff of exculpatory materials to which they are lawfully entitled and which would have led to their more timely exoneration of the false charges as described in the various Paragraphs of this Complaint.

123.    In this manner, the Defendant Officers, acting in concert with each other and with other unknown co-conspirators, including persons who are and who are not members of the Rockford Police Department, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

124.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

125.    As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and they suffered physical injury and sickness, and severe emotional distress and anguish, as is more fully alleged above.

126.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

127.    The Defendant Officers' misconduct described in this Count was undertaken pursuant to the policy and practice of the Rockford Police Department in the manner described more fully in preceding paragraphs, and was tacitly ratified by policy-makers for Rockford with final policymaking authority.

## Count VII - Supervisor Liability

### 42 U.S.C. § 1983

128.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

129.    The constitutional injuries complained of herein were proximately caused by a pattern and practice of misconduct, which occurred with the knowledge and consent of those of the Defendant Officers who acted in a supervisory capacity, including but not limited to Defendants Iasparro, Lindmark and Glover, such that these officers personally knew about, facilitated, approved, and/or condoned this pattern and practice of misconduct, or least recklessly caused the alleged deprivation by their actions or by their deliberately indifferent failure to act.

130.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

131.    The misconduct described in this Count was undertaken pursuant to the City's policy and practice in the manner more fully described above.

132.    As a result of this violation, Plaintiffs suffered injuries, including but not limited to physical sickness and injuries, and emotional distress, as is more fully alleged above.

133.    Absent knowing participation by the command personnel responsible for supervising the Defendant Officers, the misconduct alleged in this Complaint could not have occurred.

## Count VIII – Malicious Prosecution

## 42 U.S.C. § 1983[1]

134.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

135.     Defendant Officers caused Plaintiffs to be improperly subjected to judicial proceedings for which there was no legitimate probable cause.  These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were ultimately terminated in Plaintiffs' favor in a manner indicative of his innocence.

136.     The Defendant Officers accused Plaintiffs of criminal activity knowing those accusations to be without genuine probable cause, and they made statements to prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

## Count IX – State Law Claim

## Malicious Prosecution

137.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

138.     Defendant Officers caused the Plaintiffs to be improperly subjected to judicial proceedings for which there was no legitimate probable cause. These judicial proceedings were instituted and continued maliciously, resulting in

---

[1]     Plaintiffs are including this claim in his First Amended Complaint to preserve it in the event that the Seventh Circuit overturns its ruling in *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001).

injury, and all such proceedings were ultimately terminated in the Plaintiff's favor in a manner indicative of innocence.

139.    Defendant Officers accused the Plaintiffs of criminal activities knowing those accusations to be without genuine probable cause, and made statements to the police and/or prosecutors with the intent of exerting influence to institute and continue the judicial proceedings.

140.    Defendant Officers also fabricated evidence and failed to disclose the manner in which that evidence was fabricated.  Additionally, the Defendant Officers withheld evidence that would have proven the Plaintiff's innocence.

141.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

142.    As a result of this misconduct, the Plaintiff sustained injuries, including physical injury and sickness, and emotional pain and suffering, as more fully alleged above.

## Count X -- State Law Claim

### Intentional Infliction of Emotional Distress

143.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

144.    In the manner described more fully above, by wrongfully inculpating the Plaintiff in a crime he did not commit, Defendant Officers intended to cause emotional distress.

145.    In doing so, Defendant Officers' conduct was extreme and outrageous and caused the Plaintiff severe, disabling emotional distress.

146.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

147.    As a result of this misconduct, Plaintiff sustained injuries, including physical injury and sickness, and emotional pain and suffering, as is more fully alleged above.

## Count XI -- State Law Claim

## Respondeat Superior

148.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

149.    In committing the acts alleged in the preceding paragraphs, Defendant Officers were members of the Rockford Police Department, acting at all relevant times within the scope of their employment.

150.    Defendant City of Rockford is liable as the principal for all torts committed by its agents.

## Count XII -- State Law Claim

## Indemnification

151.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

152.    Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

153.    The Defendant Officers are or were employees of the Rockford Police Department, and acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, TYJUAN ANDERSON, respectfully request that this Court enter judgment in his favor and against Defendants, CITY OF ROCKFORD, DOUG PALMER, DOMINIC IASPARRO, JOSEPH STEVENS, JAMES RANDALL, SCOTT MASTROIANNI, THEO GLOVER, KURT WHISENHAND, TORRY REGEZ, SHERYL LINDMARK AS THE INDEPENDENT EXECUTOR OF THE ESTATE OF GREGORY LINDMARK, AND UNKNOWN EMPLOYEES OF THE CITY OF ROCKFORD, awarding compensatory damages, costs, and attorneys' fees, as well as punitive damages against all individual defendants, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiffs, TYJUAN ANDERSON, hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED:


s/ Steve Greenberg_____
Attorney for Tyjuan Anderson


Steven A. Greenberg
Steven A. Greenberg and Assoc., Ltd.
53 W. Jackson Blvd.
Suite 1260
Chicago, IL 60604
(312) 879-9500