IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, WESTERN DIVISION

| | | |
|---|---|---|
| TYJUAN ANDERSON | ) | |
| | ) | |
| Plaintiff, | ) | 15 CV 50065 |
| | ) | |
| v. | ) | Judge Thomas Durkin |
| | ) | |
| CITY OF ROCKFORD, et al., | ) | Magistrate Judge Iain Johnston |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |
| LUMONT JOHNSON & ANTHONY ROSS | ) | |
| | ) | |
| Plaintiffs, | ) | 15 CV 50064 |
| | ) | |
| v. | ) | Judge Thomas Durkin |
| | ) | |
| CITY OF ROCKFORD, et al., | ) | Magistrate Judge Iain Johnston |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## PLAINTIFFS' PROFFER AND MOTION TO ADMIT EVIDENCE PURSUANT TO FED. R. EVID. 801(D)(2)(E)

Plaintiffs, by and through their undersigned attorneys, submit the following proffer of evidence to admit coconspirator statements at trial and move for the admission of such statements pursuant to FED. R. EVID. 104(a) and 801(d)(2)(E):[1]

---

[1] While the government typically files *Santiago* proffers in federal criminal cases in advance of trial when seeking pre-trial ruling on the admission of co-conspirator statements under FRE 802(d)(2)(E), the same principals apply in a civil conspiracy case. *See Smith v. Bray*, 681 F.3d 888, 904-05 (7th Cir. 2012) (quoting *United States v. Gewin*, 471 F.3d 197, 201, 374 U.S. App. D.C. 74 (D.C. Cir. 2006) ("[T]he rule, based on concepts of agency and partnership law and applicable in both civil and criminal trials, embodies the long-standing doctrine that when two or more individuals are acting in concert toward a common goal, the out-of-court statements of one are admissible against the others, if made in furtherance of the common goal.")

1

There are not different evidentiary rules for civil and criminal cases; both apply the same set of Federal Rules of Evidence. Fed. R. Evid. 801(d)(2)(E) provides that a statement is not hearsay if it was "made by the party's coconspirator during and in furtherance of the conspiracy." "It is clear that the rule is equally applicable to civil cases. Fed.R.Evid. Rule 1101(b); *see also Filco v. Amana Refrigeration, Inc.,* 709 F.2d 1257, 1267 (9th Cir.) (discussing coconspirator exclusion in a civil case), *cert. dismissed,* 464 U.S. 956, 104 S.Ct. 385, 78 L.Ed.2d 331 (1983); *Oreck Corp. v. Whirlpool Corp.,* 639 F.2d 75, 80–81 (2d Cir.1980) (same), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981)." *S.E.C. v. Tome*, 638 F. Supp. 629, 633–34 (S.D.N.Y. 1986). See also *Paul F. Newton & Co. v. Texas Commerce Bank*, 630 F.2d 1111, 1121 (5th Cir. 1980) ("the court's construction of the requirements of Rule 801(d)(2)(E) was not based upon considerations unique to criminal actions. We therefore conclude that the judicial gloss *James* imposed upon Rule 801(d)(2)(E) should apply in civil actions as well as criminal").

Plaintiffs' conspiracy claims were reinstated by the Seventh Circuit and remanded to the District Court, which found that Plaintiffs presented sufficient evidence to go to trial on "the claims for failure to intervene and conspiracy based on the underlying due process claims." Doc. 282 at 2. Relevant to this motion, Plaintiffs allege that the Defendant officers and others reached an agreement amongst themselves to frame Plaintiffs for the Hanson murder by adopting a false story about what happened, which was used to thereby deprive Plaintiffs of their due process rights. Moreover, the Defendant Officers acted in concert with each other and with

2

other co-conspirators, including persons who are and who were not members of the Rockford Police Department. **Anderson Dkt. 64, ¶¶125-127; Johnson Dkt. 1.**

These other co-conspirators include Alex Dowthard, Antoine Lambert, and Lataurean Brown, who, whether by coercive means or not, made statements that contributed to the underlying prosecutions. This includes the prison recordings of Alex Dowthard ("Dowthard Tapes"). As discussed below, parts of those recordings are admissible as coconspirator statements pursuant to FED. R. EVID. 801(d)(2)(E).

The analysis is not complicated - The party seeking admission of a statement under Rule 801(d)(2)(E) must demonstrate that "(1) a conspiracy existed, (2) that the defendant and the declarant were members of the conspiracy, and (3) that the statement(s) sought to be admitted was made during and in furtherance of the conspiracy." United States v. Alviar, 573 F.3d 526, 540 (7th Cir. 2009).

The statements between and by the coconspirators in furtherance of the alleged conspiracy which Plaintiffs seek to admit fall into several categories that concern aspects of the conspiracy. These statements establish: the information flow between and among the conspirators to help each perform his role; the existence of a conspiracy to create a false inculpatory statement and then use that statement to prosecute plaintiffs; the existence of the conspiracy more generally to frame Plaintiffs for murder; and the suppression of evidence, namely the jail recordings as well as favorable testimony. The communications also include statements concerning the means used to conceal the conspiracy's illegal activities and statements to others

3

outside the conspiracy to reassure those individuals, to seek their cooperation, and to encourage them to not reveal information that would expose the conspiracy.[2]

The Court may make a pretrial ruling as to the admissibility of these coconspirator statements. *See Santiago*, 582 F.2d at 1130-31; *Alviar*, 573 F.3d at 540; *United States v. Harris*, 585 F.3d 394, 398, 400 (7th Cir. 2009); *FRE 104(a)*. Here, this Court has already determined there is sufficient evidence of a conspiracy to present that claim to the jury, so the threshold requirement of showing that "a conspiracy existed" has been satisfied.

Plaintiffs must also show that Defendants and the declarant(s) were members of the conspiracy. Here, Plaintiffs have alleged that Defendant Palmer, together with his co-defendants, conspired to build a case against Plaintiffs (by manufacturing evidence) and bury evidence that did not fit that case, with the objective being to implicate Plaintiffs for the Hanson murder. Plaintiffs allege that they did so by coercing Alex Dowthard, through a "go between" named Antowan Lambert, both of whom acquiesced and eventually agreed to adopt the Defendants' false narrative through a series of undisclosed threats against, and promises to, Dowthard. *See Anderson v. City of Rockford*, 932 F.3d 494, 502 (7th Cir. 2019).

By their statements and actions, they joined in the conspiracy. They don't have to be sued to fill that role. "As we have just pointed out, before the district court, the Government was required to demonstrate, by a preponderance of the evidence, that

---

[2] Many of these statements are also admissible for a non-hearsay purpose, such as to show the course of the investigation and the effect of certain coercive efforts on the co-conspirator.

4

the individuals, although unindicted, were in fact members of the conspiracy. This process identifies coconspirators to a degree of certainty sufficient to permit the consideration of their statements despite the statements' otherwise disabling characteristic as hearsay." *United States v. Ladd*, 218 F.3d 701, 705 (7th Cir. 2000)

Finally, Plaintiffs must show that the statements to be admitted were made "in furtherance of" a conspiracy—-this has a "relatively low burden of proof." *United States v. Shoffner,* 826 F.2d 619, 628 (7th Cir. 1987); *United States v. Kelly*, 261 F.R.D. 147, 151 (N.D. Ill. 2009). Thus, all that remains is what statements are to be admitted. To that end, the Court need not now decide each, but rather may paint by a broad brush of categories. Clearly, statements made at the Defendant's and other coconspirators' behest that furthered this investigation and prosecution are admissible.

This pleading does not, of course, detail all of the Plaintiffs' evidence that establishes the existence of a conspiracy or all of the coconspirator statements that could be admitted pursuant to FED. R. EVID. 801(d)(2)(E). Instead, this submission highlights certain evidence that is sufficient to establish the existence of the conspiracy as alleged in the operative complaint and the participation of the coconspirators.

In summary, as part of this conspiracy, Defendants coerced Dowthard and others into providing false testimony against Plaintiffs. They did so by, among other things, causing a parole violation to be lodged against Dowthard, as well as a specious forgery charge, which resulted in his incarceration in the Illinois Department of

5

Corrections (IDOC). They agreed to assist Dowthard to hasten his release from IDOC thru secret means, including threats to Dowthard and others, writing a letter to the parole board and a secret deal to drop the forgery charges, but only if he agreed to testify falsely, implicating Plaintiffs. While in IDOC Dowthard made recorded phone calls to others, including his friend Antowan Lambert. Defendant Stevens admitted that he used Lambert to approach Dowthard and obtain his "cooperation." Lambert then funneled messages to an incarcerated Dowthard, and on these recorded calls explains how the police told him (Lambert) they needed Dowthard to make statements falsely implicating Plaintiffs, despite the fact that Dowthard told Defendants (and Lambert) that he did not witness the murder. Lambert explained how the police would then help Dowthard if he adopted their story.

Specifically, Dowthard initially denied being present when his nephew was shot and killed. As reflected in the Seventh Circuit's opinion: "On May 2, for example, the same day Detectives Palmer and Stevens visited Dowthard at Big Muddy, Dowthard told his mother that "he told them the truth," a clear reference to telling the police that he did not know who shot the young boy. And again, on May 11, Dowthard told his cousin Antowan Lambert that, at the time of the murder, he "wasn't no mother f* * * ing where around, you know what I'm saying.""" *Anderson v. City of Rockford*, 932 F.3d 494, 501–02 (7th Cir. 2019). The Seventh Circuit continued to describe the jail calls as follows:

> The jail calls further revealed that Lambert, who officers were also pressing for information about Hanson's murder, coached Dowthard on what to tell the police about the murder and fed him information about what Lautaurean Brown had told the police—all in an effort to enable

6

>Dowthard to align his account with Brown's. For example, on May 16, two weeks before Dowthard gave police a statement incriminating the plaintiffs, Lambert told Dowthard to memorize what he was telling him so that Dowthard's statement "w[ould] coincide" with what Brown had already told police.
>
>In other calls from jail, Dowthard told friends and family that the police were pressuring him to cooperate. In early May, for instance, he told his mother that "[the police] talkin' about bringin' me up on some federal charges or whatever." On May 13, Dowthard learned he was being charged with an unrelated forgery that would impact his parole status. On May 20, Dowthard told someone named Maria that the police were "playin' with me, hurtin' me until I'm damn near at the point man, you just don't know." In this same call, Dowthard added "[Detective] Palmer man got—hittin' me all upside my head and everything, man tellin' my sister what to—put his hands on me."

*Id.*

The Defendants used Lambert to communicate "facts," coupled with threats and promises, to Dowthard, while Dowthard was incarcerated. As the Illinois Appellate Court had earlier aptly summarized after post-conviction relief, "Lambert said that the police gave him a guarantee' about 'the charge and everything else.'" *People v .Johnson*, 2014 IL App (2d) 130368-U, ¶ 91. "The instruction to Dowthard was clear: implicate plaintiffs in the Hanson shooting and he would be released from prison and the pending charges would be dropped. As Lambert explained, "They just want them n*ggers behind * * * bars, man." *Id.*

The end result of defendants' coercive campaign via Lambert was that Dowthard was pressured into adopting a false story, consisting of three key facts fed to him by the police, through Lambert: (1) plaintiffs drove a red car up to the Dowthard family home; (2) plaintiffs jumped out of the red car and fired gunshots at the house; and (3) Dowthard and Brown drove away. *See* Doc.

7

249-63 at 22-24. Dowthard eventually acquiesced and adopted the false story, which he agreed to repeat at Plaintiffs' two separate criminal trials. Doc. 249-14 at JR8615-8621 Defendants Palmer and Stevens coerced Dowthard into making these statements while knowing they were false. Doc. 249-9 at 131-33.

Defendant Palmer expressly acknowledged knowing at the time that Dowthard's statement was false and instructing him to stick with the false statement at the criminal trials. Doc. 249-8 at 206-07 (Palmer "told Lataurean Brown and Alex Dowthard to testify consistent with their statements even though [he] believe[s] their statements are not truthful").

Accordingly, all of the statements are admissible.

8

WHEREFORE, Plaintiffs respectfully ask this Court to admit the above-summarized co-conspirator statements under Federal Rule of Evidence 801(d)(2)(E).

Respectfully Submitted,

**LUMONT JOHNSON**
**ANTHONY ROSS**
**TYJUAN ANDERSON**

/s/ Steven A. Greenberg
*Attorney for Tyjuan Anderson*
Steven A. Greenberg
53 W. Jackson Boulevard
Suite 1260
Chicago, IL 60604
(312) 879-9500
Fax: (312) 650-8244


/s/ Roshna Bala Keen
*Attorneys for Plaintiffs Johnson & Ross*
Jon Loevy
Arthur Loevy
Gayle Horn
Roshna Bala Keen
Elliot Slosar
Loevy & Loevy
311 N. Aberdeen St., 3rd Floor
Chicago, IL 60607


Steven A. Greenberg
Greenberg Trial Lawyers
53 West Jackson Blvd., Suite 1260
Chicago, Illinois 60604
(312) 879-9500

9